The next item on our calendar is Michael Newsome versus several people who are on submission as Thank you May it please the court. The killing of Mouth and Jules was an unreasonable seizure under the Fourth Amendment for three reasons. Under the totality of the circumstances test in the Second Circuit, there was no danger in this case. If you look at the cases decided in other circuits, one of the key things that they look at was whether the dogs posed any danger to the police officers. Here, there was absolutely no danger. In fact, they were killed days after they were seized and days after any legitimate search was conducted in the residence. The second reason is that they also had days to consider the proper course of action in this case. The dogs had been seized by the Humane Society and then they continued to reside at the Humane Society and then the killing occurred days after that. What's the status of the Humane Society, if we can tell from the record, as a state actor? Does it operate to euthanize animals that it's holding just to some separate entity? It must have some authority to do that. It's a little bit difficult to tell from the complaint, but I think what the answer is is that they would be properly characterized as being in a conspiracy with the state. The legal effect of that is that they can be held liable. Someone told the Humane Society that they can euthanize these dogs, correct? They were instructed by, as far as the record reveals, they were instructed by the police to do that. Because of that, they would be involved as a conspirator with the police in doing that. They never said why? They never said do we have to? Can we put them out for adoption or anything like that? The record doesn't say anything about that. They never tried to defend or represent the interests of the dogs. There's nothing that reveals them trying to defend the interests of the dogs. There was a telephone, well, I think I believe two telephone conferences. And in both telephone conferences, the Humane Society was essentially repeating the line or the explanation that was given by the police. But they were aggressive and dangerous? Correct. But the evidence in the record is that they posed no dangers to the officers. And that's critical because... When you say the evidence in the record, all we have is a complaint, right? Correct. Yes, the allegations in the record are that they posed no danger to the officers because of the timeline, right? They were securing custody at the Humane Society. And so they posed no danger to the officers who were executing a search days before that. It's just not possible to happen. I'm not sure that that follows necessarily. But I think I'd like you to focus on the seizure versus the euthanization of these dogs. You're challenging both or one or the other? It would be both. Okay. So the seizure, I think what the complaint alleges is that these dogs were seized not because they were aggressive or a threat. In fact, one of them, according to the complaint, was in a cage at the time, right? Correct. They were seized because Mr. Bogan wouldn't play ball and wouldn't come down and speak with law enforcement officers. That's correct. Okay. And so there's a number of defendants here. There's only a couple of individuals who are identified in the complaint, the receptionist and Bogan, the chief of police, correct? Right. And the person from the Humane Society, which is lighter. Correct. But the other officers are not really mentioned at all other than they're tacked on with a police report that indicates they seized the dogs. Correct. There would be, I mean, the evidence that they are defendants would be based on the police reports that are cited in the appendix. And they're the ones who executed, performed the search at the residence. So they would be co-conspirators in the plot to seize the dogs. Was there anything in the complaint that indicates that they were seizing the dogs for an improper reason? I mean, there's no statements attributed to them, right? Well, there's no statements about retaliatory motive in the complaint about what they said. But their actions are reflected in the notes that were taken of the arrest. Well, the actions are simply that they seized the dog. Actually, the police report indicates that they were aggressive dogs, right? Well, the police, well, to answer your first question, the record does show that they seized the dogs. And they would do that pursuant to their duties as part of the department who has a policy of retaliation. So because they are conspirators in the action, the other actions of the co-conspirators, including Bogan, would be something that they could be held liable for until they renounce the conspiracy. Mr. Newsom was not under arrest at this time, right? At the time of the seizure, no. He could be taking care of them. There was no need to seize them from the house. That's correct. At the time of the dog's destruction, he was under arrest. But he had attempted to arrange for somebody else to care for the dogs. He was arrested by the time they were out with the Humane Society? He was arrested by the time they were killed. And incarcerated, right? And incarcerated, yes. But he had arranged for someone to care for the dogs? He had attempted to get them released to one of his relatives. I think it was his mother, if I recall correctly. And everything you're saying here is based on the complaint, right? You're not going outside of the pleadings? The complaint and the police report. Which is part of the pleading. Yes, correct. So the third factor, and we've talked about it a little bit, is the retaliatory motive. And that's, I think, very important for the Fourth Amendment and the other causes of action. Because it's an intentional action. And under Fourth Amendment law and also under the substantive due process claim that we have, the fact that it's an intentional action weighs in favor of a finding that it's unreasonable. And that's how you would factor in the asserted retaliation? Yes, that would be one of the factors that you look at. Because it's a totality of the circumstances test, the reason that they do it is something that you would weigh under the totality of the circumstances test. So I believe the Fourth Amendment, based on decided case law in this Court and the other circuits, is relatively clear. I think the other question is the due process. And we've broken that down into two points, the 2A and the 2B subpoint. The district court, I think, clearly got it wrong on relying on the Love case, because the Love case didn't deal with intentional actions. And as this Court has found in two other cases, it says if there's an intentional substantive violation of constitutional rights, Love doesn't apply and the Parrott case doesn't apply. As a result, there is no need to show that post-deprivation remedies are inadequate. If you violate the Constitution, then intentionally violate the Constitution, that is enough to state a claim under the due process clause under this circuit's past decisions. The 2B subpoint, I think, is probably the most difficult subpoint to talk about in terms of where the law sits at this point. The judge in the judge below rested his decision on the Hudson case, which is, in my mind, a parallel to the Parrott v. Taylor case. The Supreme Court's decision in the Nick that came out after we filed our brief deals, it is admittedly a takings case. But the rationale in the Nick case was to overrule Williamson, another takings case. But if you look back at Williamson, they relied on due process cases to get to the result. The upshot of that is when there is a violation of the Constitution, I would say the prima facie case occurs when that violation happens if it is an intentional act. And under the reasoning in the Nick case in the Supreme Court, that suggests to me that the result in Hudson was incorrect. And because it is an intentional action, the due process violation also occurs at the time that the intentional act occurs. So I believe the district court was wrong to rely on Hudson, and it has been subsequently overruled by the Supreme Court. So the relief you seek is for us to vacate, actually reverse the district court and let this case go on and require the other side to file an answer, I guess? I think that's correct. I think a couple of things have to happen. The first is that I think it needs to be reversed on the Fourth Amendment and the due process claim because the court held those things. And if they're not reversed, each point is not reversed, there could be an argument below that they were affirmed because they were not mentioned in the decision. So I think that there has to be a reversal on the Fourth and the Fourteenth. The third thing is that the retaliation claim, which I think would exist on a liberal reading of the pro se complaint, I think probably what has to happen there is to note that those claims exist and to allow the court to deal with those in the first instance when it returns to the district court. So for further analysis of the retaliation claims, which it did not reach. Correct. Correct. And it might be, you know, the other interesting legal issue here is the retaliation based on the Fifth and the Sixth Amendment, which we cited to you a district court case. It doesn't seem to be a lot of well-developed law on the Fifth and Sixth Amendment retaliation claims. Most of those usually get subsumed in the First Amendment analysis claims. But in this case, I think there's a particular reason to perhaps address those, because this is probably on the allegations, and accepting the allegations is true, this is probably as pure a case you're going to see where there's a retaliation for the right not to incriminate and the right to seek the assistance of counsel. His allegations are directly addressing the fact that he asserted his right to talk to his counsel and he asserted his right not to incriminate himself. So that might be a useful thing for this Court to do, but not necessary. Thank you. No one to respond to. Thank you. Thank you. Nothing in their brief requires you to tell us anything in their brief? Oh, they haven't. They filed briefs. They didn't file any briefs. Unfortunately, you know, the arguments aren't developed by somebody on the other side. All right. Thank you. Thank you. The next case also has a couple of people. It's Ruddy v. Grimcoe, Gustavia Holm, and SLF New York Holdings. The only people appearing today are Melvin Grimcoe and Gustavia Holm. This is a case of foreclosure. We don't have the plaintiff here. It's on submission. But why don't we hear from Grimcoe? Thank you. May it please the Court. Henry Masch of Rifkin-Radler, attorney for Melvin Grimcoe. The district court correctly dismissed the complaint for lack of subject matter jurisdiction. Grimcoe is an attorney? Melvin Grimcoe is the attorney for SLF who commenced the eviction proceedings a year after the judgment of foreclosure. And the plaintiff attempted to invoke the Court's supplemental jurisdiction to assert two state law claims against Mr. Grimcoe. But this Court has held that there's no supplemental jurisdiction when the Court doesn't have original jurisdiction to anchor the case to the federal courts in the first place. And that's exactly what we have here. The district court was extremely patient with this plaintiff who was representing himself. The plaintiff had the opportunity to file a complaint, an amended complaint, a second amended complaint. And each time the plaintiff failed to allege the citizenship of each of the defendants, which could have established diversity jurisdiction. And each time the plaintiff failed to state a claim under federal law. Now, the factual basis for the complaint is that the original foreclosure was invalid because the original holder of the mortgage, People's Choice, transferred that mortgage while it was in bankruptcy proceedings and didn't get authority from the Bankruptcy Court. But this Court just held in the mortgage foreclosure action itself just in September that the Bankruptcy Court did, in fact, give People's Choice the authority to transfer that mortgage. And I have the citation for that, if you'd like it. In spite of the stay? There was no stay of the judgment of foreclosure pending appeal. Ah. So they didn't. Right. Okay. But even if this Court were to find that there was original jurisdiction with respect to one of Mr. Krimko's co-defendants, the plaintiff still failed to state a claim under State law. The plaintiff asserted two State law claims, one for professional negligence and one for violation of section 349 of New York's general business law. In New York, you can't have a professional negligence claim unless you have privity with the attorney, unless there's some exception for fraud or collusion. And in this case, the complaint doesn't allege that the plaintiff had an attorney-client relationship with Krimko. Krimko represented the company that was evicting. Oh, they didn't foreclose? No. They represented SLF, which was eventually had the mortgage and then was evicting his tenants who were there. And there's no heat. The plaintiff can't plausibly allege any exception, because Mr. Krimko wasn't involved in the original mortgage foreclosure. That happened in June 2016. His client didn't get the mortgage and start the eviction proceeding until June of 2017. And with regard to the violation of section 349 of the general business law, that section requires the plaintiff to allege consumer-oriented conduct. That's conduct that's directed to consumers as a whole and not at individuals. And in this case, the allegedly improper foreclosure and the subsequent eviction proceeding is unique to these parties. It's not directed at consumers generally. And for that reason, the plaintiff also failed to state a claim under GBL 349. So just to conclude, there was no supplemental jurisdiction here because the court lacked original jurisdiction, and the plaintiff also, in any event, failed to state a claim that's viable under state law. Thank you. We'll hear from Gustavia Holmes. Gustavia Holmes, you're representing them? Yes, I'm representing Appellees Gustavia Holmes, LLC, the Margolin and Weinreb Law Group, and Allen H. Weinreb, Esquire. They were all sued as defendants in this case, the appellees. Oh, I see. And Gustavia Holmes was the builder? Gustavia Holmes was the successor in interest to the note in the mortgage. They're the ones who initiated the foreclosure action in 2016, and Margolin and Weinreb Law Group was representing Gustavia Holmes, LLC, and Allen H. Weinreb is the partner of Margolin and Weinreb. In the foreclosure? In the foreclosure action in 2016, correct. We asked this Court to affirm the district court's decision granting dismissal of the underlying action as the district court had neither diversity nor federal question jurisdiction. As this Court may be aware, this is the plaintiff's appellant's third attempt to undo a judgment of foreclosure in sale in a related district court foreclosure action commenced in 2016 on an investment property which was later appealed in this court and is currently pending. Not content, the plaintiff appellant Ruddy, excuse me, commenced an action in 2017 under the Federal Debt Collection Practices Act and various New York State claims, which FDCPA claims was subsequently dismissed with prejudice against appellee defendants Gustavia Holmes, LLC, and the Margolin and Weinreb Law Group, LLP, after they moved for dismissal in that 2017 action. This was never appealed. Similarly, in the instant action, this Court should affirm the district court's decision for the following reasons. The plaintiff appellant Ruddy, despite the many chances provided by the district court because of his pro se status, failed to properly plead diversity jurisdiction. Plaintiff appellant simply argues that because Gustavia Holmes, LLC, had diversity jurisdiction in the 2016 foreclosure action, it follows that he has diversity jurisdiction in this action. This is not the case, as no diversity jurisdiction was invoked by Plaintiff Ruddy regarding the citizenship of the appellee defendants' limited liability members and the limited liability partners. Despite the filing of the subsequent amended complaints and the guidance in the district court's order given by Kogan, Ruddy never pled diversity of citizenship with any specificity or particularity. Equally, unavailing of this Court's jurisdiction were appellant plaintiffs' attempts at, again, invoking Federal question jurisdiction. Regarding the FDCPA claims against Gustavia Holmes and Margolin and Weinreb Law Group, the district court has already held in the related 2017 action commenced by Ruddy that Gustavia Holmes, LLC, and the Margolin and Weinreb Law Group were not debt collectors. The relevant provisions of the FDCPA only apply to the activities of a debt collector, which is defined as any person who uses any instrumentality of interstate commerce with the principal purpose, which is the collection of any debts, or who regularly collects or attempts to collect directly or indirectly, debts owed due or asserting to be owed due to another. You have to admit it's pretty creative. What is? To bring an FDCPA case. It is, Your Honor. And it happens all the time to our firm. We have several defendants or borrowers that they lose in an underlying foreclosure action, and then they launch FDCPA claims, as well as State court claims, and sometimes we don't even know we're being sued. We're not served with the papers. Here, based on the collateral estoppel from the 2016 action and the fact that the 2017 action already dismissed the FDCPA claims with prejudice against Appelli, Gustavia Holmes, and Margolin and Weinreb Law Group, the claims made herein under this action similarly fail. As to a law firm, the vast majority of courts in this Court have found that such an action to enforce an interest in real property does not qualify as debt collection. Regarding the claims involving violations of the Federal Credit Reporting Act, the District Court was correct in its analysis of Ruddy's claims pursuant to 16A1S2A and B. As against Appelli, Gustavia, under 16A1SB1, a plaintiff must allege defendant is a furnisher of information, the defendant received notice of the consumer dispute from a consumer reporting agency, and that defendant acted willful or negligent in the noncompliance of that statute. Plaintiff has failed to plead any of the facts to show that the Appelli defendant, Gustavia, received any notice of dispute from any consumer agency or that any alleged harm or loss of credit resulted in saying. With regard to the additional arguments raised in the appeal regarding the bid price and that the plaintiff in the underlying 2016 foreclosure action failed to name the first mortgagee, the Court must ignore those arguments because they were never raised and were only raised first on this appeal. If there's any questions, I rest on the briefs. Thank you, counsel. Thank you. Hearing no opposition, we will take the case under consideration and reserve decision. Thank you both for appearing. The next two cases on our calendar are on submission, so I will ask the clerk to adjourn court. Thank you. Thank you.